UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-259-F

| | | |
|---|---|---|
| SADIE HOWARD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| COUNTY OF DURHAM, | ) | |
|     Defendant. | ) | |

This matter is before the court for ruling on the Defendant's Motion for Judgment on the Pleadings [DE-8]. The motion has been fully briefed and is ripe for disposition. *After* the instant motion was submitted to the court for ruling, the plaintiff filed two additional motions. Those motions will be addressed in a separate order.

**FACTUAL BACKGROUND**

The plaintiff, Sadie Howard ("Howard"), was employed by the Durham County North Carolina, Tax Administrator's Office between 2001 and April 18, 2007, when she was terminated by Director of Tax Administration, Kenneth Joyner, following a "pre-dismissal conference" for her "unacceptable personal conduct." The Complaint [DE-1.3] initially was filed in Wake County, North Carolina, Superior Court, on or about April 13, 2010, and timely was removed to this court by the County on June 23, 2010.

Accepting as true the factual allegations of the Complaint, the predicate for this civil rights lawsuit is as follows. On April 10, 2007, at about 3:15 p.m., Howard advised a parking lot

security guard[1] that a mechanic would drop off her car in the short-term (30-minute) County parking lot, but that she expected to be out of the meeting by 4:00 p.m. Howard's meeting ran longer than she expected. When the security guard advised someone in the Tax Office that he was going to have Howard's car towed, another staff member moved Howard's car out of the County's parking lot and into a space on the street.

Once Howard's meeting concluded and she left the County building for the day, she contends the security guard followed her to her car, taunting her all the way and exhibiting "menacing and threatening behavior" toward her. Complaint [DE-1.3] at ¶ 25. Howard responded by cursing at the security guard, who allegedly promised to report her actions and "have her fired." Id. at ¶ 26. About a week later, Howard received a letter from Director of Tax Administration Kenneth Joyner, notifying her of a "pre-dismissal" conference the next day concerning her conduct on April 10th. See id. at ¶ 28. According to the Complaint, Director Joyner's letter falsely accused Howard of calling the security guard a "Black Mother Fucker." Id. at ¶ 29. The "pre-dismissal" conference was conducted and Howard explained her actions as having been "prompted by the security guard's unnecessarily threatening behavior." Id. at ¶ 31.

Two days after the "pre-dismissal" conference, Howard received a termination letter from Director Joyner, citing "unacceptable personal conduct" and finding that Howard had been on duty when the incident occurred. See id. at ¶¶ 32 & 33. Howard exhausted her administrative remedies and instituted this action, alleging the County fired her in violation of her right to free speech under the First and Fourteenth Amendments of the United States Constitution, and seeking damages and attorney's fees pursuant to 28 U.S.C. § 1983. Additionally, she seeks damages on the common law theory of wrongful termination in violation

---

[1] Plaintiff alleges, and the court assumes, that the guard was employed by a private company hired by the County to provide security services on County property. See Complaint [DE-1.3] ¶ 11.

of North Carolina's public policy by virtue of the County's terminating her because she exercised her right to free speech.

## PROCEDURAL BACKGROUND

The County filed an Answer [DE-3] to the Complaint on June 24, 2010. After the parties submitted their Rule 26(f) Report [DE-5], the Magistrate Judge entered a Scheduling Order [DE-6] on August 25, 2010. The next day, the Clerk of Court notified counsel for the parties of their duty to identify an agreed-upon mediator within twenty-one days, and set the mediation deadline for February 18, 2011. The public docket sheet reflects no activity in the case between August 26, 2010, and March 11, 2011. However, Clerk's notes reflect a lengthy delay in the mediator selection process, apparently resulting from the parties' inability to confer and agree on a mediator. The Mediation Clerk finally was able to appoint a mediator by order of March 11, 2011 [DE-7] – ten days prior to the deadline for filing dispositive motions set by the August 25, 2010, Scheduling Order [DE-6].

With the deadline set by the Scheduling Order, the County filed a Motion for Judgment on the Pleadings [DE-8] on March 14, 2011. After seeking and receiving an extension of time to respond to the dispositive motion, Howard filed her Response [DE-14] on April 11, 2011. On May 2, 2011, the County's motion became ripe and was submitted to the court for ruling. Events transpiring thereafter resulted in Howard's filing two additional motions that will be addressed in a later order.

## ANALYSIS

The gravamen of the County's motion for judgment on the pleadings under Rule 12(c), FED. R. CIV. P., is that, on its face, the Complaint fails to state a claim upon which relief may be granted. The County perceives three issues presented by the Complaint, to each of which it suggests a negative response is required, thus necessitating entry of judgment on the pleadings in its favor. The County's "questions presented" are :

3

- Whether the complaint states a claim under 42 U.S.C. § 1983 upon which relief may be granted, for abridgment of a government employee's free speech by the employer in violation of the First Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment.

- Whether County of Durham is liable under respondeat superior or any other indirect theory of liability for an alleged constitutional tort by a particular employee where there is no delegation of policymaking authority, nor any policy or custom dictating the result.

- Whether the complaint states a claim upon which relief may be granted under a state law theory of wrongful discharge (termination).

Memorandum [DE-9], at p.2.

A. Standard of Review

A motion for judgment on the pleadings under Rule 12(c), FED. R. CIV. P. differs from a motion to dismiss under Rule 12(b)(6), FED. R. CIV. P., in that the former is filed *after* the Answer, while the latter is filed before or contemporaneously with the Answer. The standard by which complaints are to be judged is the same for both motions. *See E.E.O.C. v. Bojangles Restaurants, Inc.*, 284 F. Supp. 2d 320, 325 (M.D.N.C. 2003) (citing 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (2d ed.1990)). The purpose of a motion to dismiss is to test the sufficiency of a complaint, and is not meant to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A 12(b)(6) motion should only be granted if, after assuming all facts in the relevant pleadings to be true, and drawing all reasonable inferences therefrom, the complaint does not allege enough facts to state a claim that is plausible on its face. *Id.*

The Supreme Court instructed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that the reviewing court must determine whether it is plausible that the factual allegations are "enough to raise a right to relief above the speculative level[.]" *Id.* at 555. In *Twombly*, the Court explained that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does

4

not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (internal citations and brackets omitted).

### B. First Amendment Free Speech Claim under 42 U.S.C. § 1983

#### i. *Protected Speech*

The County first argues that the Complaint fails to allege a factual basis to support Howard's claim that she was terminated from public employment in retaliation for engaging in protected speech. Although the parties do not agree on the exact phrasing of Howard's speech at issue, both versions contain a common term and one adds a reference to race.[2]

The only speech Howard alleges she engaged in was: "[a]s she approached her car, and in response to the security guard's continued menacing and threatening behavior, Plaintiff cursed at the security guard." Complaint [DE-1.3], at ¶ 25. Howard contends the incident occurred while she was "off duty." *See id.* at ¶ 19. While the confrontation seems to have begun on County property, it continued as she walked toward her car parked on the street. *See id.* at ¶¶ 20, 23-25. Admittedly, the curse specifically was directed to a security guard who initially warned Howard about the time limitation on parking and who allowed her car to be moved

---

[2] The Complaint alleges that Howard is African-American, *see* Complaint [DE-1.3] at ¶ 1. It does not contain an allegation of the security guard's race, and there is no suggestion that the exchange was racially motivated.

5

rather than having it towed. Howard's cursing at him allegedly was in response to the guard's "taunting" her and "treating her in such menacing and disrespectful tones," when she eventually returned for her car. *See id.* at ¶¶ 24-25.

Howard believes the guard reported the incident to the Deputy County Manager and alleges that Director Joyner's "pre-dismissal" letter falsely accused her of referring to the security guard as "Black Mother Fucker." *See id.* at ¶¶ 27-29. The Complaint does not contain any allegation whether she corrected this misapprehension during her pre-dismissal hearing.[3]

Howard contends that her termination was "a violation of Plaintiff's rights under 42 U.S.C. § 1983, in that [the County] terminated Plaintiff for exercising her right to free speech in the absence of a valid governmental interest." *Id.* at ¶ 37. Boiled down to its essence, Howard's premise is that she has a right guaranteed by the First Amendment to the United States Constitution not to be terminated from her County job for cursing at a security guard outside the confines of a County office building after the conclusion of her work day.

A citizen who works for the government nevertheless is a citizen. *See Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). The First Amendment limits the ability of a public employer, such as the County, to "leverage the employment relationship to restrict incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Id.* (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary

---

[3] The Complaint itself alleges that Howard "cursed" at the security guard, *see* Complaint [DE-1.3] at ¶ 25; the Answer admits that Howard cursed at the security guard, *see* Answer [DE-3] at ¶ 25, but flatly denies that the termination letter accused Howard of calling the guard a "Black Mother Fucker," *id.* at ¶ 29. The County later argues, however, that if it did rely on a report that Howard called the guard a "Black Mother Fucker," then she was fired for uttering "fighting words," *see* Memorandum [DE-9], at 3. Howard's Response is that all she said to the guard was, "Fuck you," *see* [DE-14] at unnumbered p. 2 (citing Complaint at ¶ 25, which, in fact, does *not* contain those words). In light of the posture of the case neither party has offered an affidavit.

for the employers to operate efficiently and effectively. *See Connick v. Myers*, 461 U.S. 138, 147 (1983).

- Elements

In order for a public employee to state a claim for deprivation of First Amendment rights flowing from an adverse employment action, she first must establish that the " 'speech at issue relate[s] to matters of public interest.' " *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 351-52 (4th Cir. 2000) (quoting *Hanton v. Gilbert*, 36 F.3d 4, 6 (4th Cir. 1994)). Next, the plaintiff must demonstrate that her interest in First Amendment expression outweighs the employer's interest in efficient operation of the workplace. *See id.* Third, the employee must establish that the public employer deprived her of a valuable government benefit. *See Huang v. Board of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990) ("[C]laimant must show that the alleged retaliatory action deprived him of some valuable benefit"). Finally, the employee " 'must establish a causal relationship between the protected expression and the retaliation: that the protected speech was a "substantial factor" in the decision to take the allegedly retaliatory action.' " *Goldstein*, 218 F.3d at 352 (quoting *Edwards*, 178 F.3d at 248); *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998). "[T]he order of inquiry may vary with the circumstances of the case." *Daniels v. Quinn*, 801 F.2d 687, 689 (4th Cir. 1986).

The first three elements are questions of law. *See Goldstein*, 218 F.3d at 352. Because only "protected speech" can give rise to a constitutional violation, whether or not the subject speech qualifies as such is the logical initial inquiry. *Andrew v. Clark*, 561 F.3d 261, 268 (4th Cir. 2009) (quoting *Garcetti*, 547 U.S. at 418 (emphasis omitted)).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48; *see also Edwards*, 178 F.3d at 247 (explaining that whether a public employee's speech touches on a matter of public concern "rests on whether the public or the community is likely to be truly concerned with or interested in the particular expression, or

7

whether it is more properly viewed as essentially a private matter between employer and employee" (internal quotation marks omitted)); *Stroman v. Colleton County Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992) ("Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee"); *cf. Adams v. The Trustees of the Univ. of N.C. Wilmington*, ___ F.3d ___, No. 10-1413, 2011 WL 1289054, slip op. at *13 (4th Cir. April 6, 2011) (explaining that "in the unique genre of academia," a college professor's speech on "topics including academic freedom, civil rights, campus culture, sex, feminism, abortion, homosexuality, religion and morality" "plainly touched on issues of public, rather than private, concern").

Very recently, the Supreme Court reiterated the underpinnings of the First Amendment's free speech guarantee in the context of the fundamentalist Westboro Baptist Church members' anti-homosexual demonstration during the funeral of the plaintiff's son, a Marine who had died in the line of duty in Iraq.

> Whether the First Amendment prohibits holding Westboro liable for its speech in this case turns largely on whether that speech is of public or private concern, as determined by all the circumstances of the case. "[S]peech on 'matters of public concern' ... is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) (opinion of Powell, J.) (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978)). The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks omitted).
>
> " '[N]ot all speech is of equal First Amendment importance,' " however, and where matters of purely private significance are at issue, First Amendment protections are often less rigorous. *Hustler [Magazine, Inc. v. Falwell*, 485 U.S. 46,] 56 (quoting *Dun & Bradstreet*, [472 U.S.] at 758); *see Connick*, [461 U.S.] at 145-47. That is because *restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of*

8

> *public interest*: "[T]here is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas"; and the "threat of liability" does not pose the risk of "a reaction of self-censorship" on matters of public import. *Dun & Bradstreet*, [472 U.S.] at 760 (internal quotation marks omitted).

*Snyder v. Phelps*, ___ U.S. ___, 131 S. Ct. 1207, 1215-16 (2011) (emphasis added).

- Discussion

Howard's contention that she cursed at a security guard who was taunting her over a perceived parking violation, as a matter of law, simply does not describe "a matter of political, social, or other concern to the community," or "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 1216 (internal citations omitted). Although the event occurred on or near a public facility where, as a public employee Howard had attended a work-related meeting, "the content, form, and context of [her] given statement," *Connick*, 461 U.S. at 147-48, describe the quintessential "private matter" – a two-party argument over parking.

Because as a matter of law, the speech that Howard contends formed the basis of her public employment termination did not address a matter of public concern, it was not "protected" by the First Amendment and Fourteenth Amendments. While Howard may have some other ground on which to challenge her discharge from County employment, a § 1983 claim requires pleading and proof of a state entity's violation of a right guaranteed by the United States Constitution. *See* 28 U.S.C. § 1983; *see also, e.g., Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119 (1992) (explaining that § 1983 "provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law"); *Jean v. Collins*, 221 F.3d 656, 671 (4th Cir. 2000).

Howard's Complaint does not contain factual content which, accepted as true, would allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556); *see also, e.g., Glassman v.*

*Arlington County, VA*, 628 F.3d 140, 145-46 (4th Cir. 2010) (complaint must contain allegations supporting " 'claim for relief that is plausible on its face' ") (quoting *Francis v. Giacomelli*, 588 F.3d 186, 191-93 (4th Cir. 2009) (internal citations omitted)). Accordingly, as a matter of law, Howard's § 1983 claim fails to state a claim to relief that is plausible on its face.

    ii. *Pickering* Balancing

Howard nevertheless contends that the County is not permitted to suppress her exercise of free speech outside the office unless it "reasonably believe[s] that the speech . . . would disrupt the office, undermine authority, and destroy close working relationships." Response [DE-14] at unnumbered p. 6. On the contrary; "[i]f the court determines that the activity or speech does not involve a matter of public concern, the First Amendment analysis ends and plaintiff loses." *Munn-Goins v. Bd. of Trustees of Bladen Comm. College*, 658 F. Supp. 2d 713, 726 (E.D.N.C. 2009), *aff'd*, 393 Fed. App'x 74 (4th Cir. 2010) (citing *Connick*, 461 U.S. at 146; *Edwards*, 178 F.3d at 246). Here, because Howard's activity (cursing at a security guard who taunted her) did not involve a matter of public concern, the court need not balance the County's "interest in maintaining discipline and ensuring harmony or determine whether [the County] imposed a reasonable limitation on this activity." *Id.* at 728 (internal citations omitted)

    iii. *Causation*

The court having determined that Howard's speech did not address a matter of public concern, the court also need not address "whether this activity was a motivating or but-for factor in the alleged adverse employment actions." *Id.*

C. *Wrongful Termination in Violation of Public Policy*

With few exceptions, at-will employees may not assert a claim for wrongful discharge under North Carolina law. *See Wells v. Moen, Inc.*, No. 7:08-CV-180-FL, 2009 WL 2568186, slip op. at *4 (E.D.N.C. Aug. 17, 2009) (citation omitted). One exception to North Carolina's at-will employment doctrine is termination in violation of a state public policy. *See id.*; *Coman v.*

10

*Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1980).

Howard's Complaint specifically and exclusively bases her wrongful termination claim on the same factual allegations supporting her § 1983 claim. Howard contends that her termination constituted a violation of North Carolina's "public policy to protect an individual's right to free speech as expressed in the First Amendment... and the [c]onstitution and laws of the State of North Carolina. *See* Complaint [DE-1.3] at ¶ 41. She has not suggested, however, how a free speech analysis under the "constitution and laws of the State of North Carolina" differs from that applied to her federal First Amendment claim.

In light of the court's analysis of Howard's § 1983 claim and there being no allegation that the County's adverse employment action violated some other North Carolina public policy, the County is entitled to judgment on the pleadings also as to her common law claim of wrongful termination in violation of public policy.

D. *Summary and Order*

Because Howard's alleged "speech" did not involve a matter of public concern, Howard has failed to state a claim cognizable under 28 U.S.C. § 1983, or on a theory of wrongful termination in violation of public policy by her public employer, the County of Durham. Accordingly, the County's Motion for Judgment on the Pleadings [DE-8] is ALLOWED as to both Howard's § 1983 claim and her supplemental state wrongful termination claim. **The Clerk of Court is DIRECTED to remove this case from the trial and pretrial calendars.** The *Clerk of Court shall not close this case, however, pending the court's resolution of the plaintiff's remaining motions.*

SO ORDERED.

This, the ___14___ day of June, 2011.

                                                */s/ James C. Fox*
                                                JAMES C. FOX